DANIEL MORGAN, RESPONDENT, v. THE BOARD OF COUNTY COMMISSIONERS OF EUREKA COUNTY, APPELLANT.

TOWN GOVERNMENT ACT OF 1873—AFFIDAVIT BY "TAX-PAYER OF COUNTY" INSUFFICIENT. Under the act of February 21, 1873, providing for the government of a town or city in case of the filing of a certain affidavit by a resident and tax-payer of such town or city (Stats. 1873, 74, Sec. 16) : *Held*, that an affidavit stating affiant to be "a resident and tax-payer in the county " was insufficient.

TOWN GOVERNMENT ACT—AFFIDAVIT AS TO "GENUINENESS OF SIGNATURES." Where the town government act of February 21, 1873 (Stats. 1873, 74, Sec. 16), required the genuineness of all signatures to the petition therein provided for, and the qualifications of the subscribers thereto as the majority of the actual residents representing three-fifths of the taxable property of the town, to be established by affidavit : *Held*, that an affidavit stating that affiant " had examined the signatures," and that " the same represents three-fifths of the taxable property as well as a majority of the actual residents of said town to the best of his knowledge and belief," was insufficient and entirely ineffective.

Morgan *v.* Eureka County Commissioners

REQUIREMENTS OF AFFIDAVIT ON INFORMATION AND BELIEF TO E TABLISH A FACT. Where the law requires any fact to be established by affidavit, without prescribing its form, if made upon information and belief, it will be insufficient unless it states positively the facts and circumstances upon which such belief is founded.

TOWN GOVERNMENT ACT—SUFFICIENT PETITION AND AFFIDAVIT JURISDICTIONAL FACTS. Under the town government act of February 21, 1873 (Stats. 1873, 74, Sec. 16), requiring a certain petition and affidavit to be filed before any of the powers conferred could be exercised : *Held*, that the filing of a sufficient petition and affidavit were jurisdictional facts ; and that, in case of insufficiency of such petition or affidavit, there was not a mere irregularity but a total want of jurisdiction.

"BENEFICIAL INTEREST" TO SUSTAIN CERTIORARI AS TO PROCEEDINGS UNDER TOWN GOVERNMENT ACT. A tax-payer of the county and resident of a town, purporting to have been organized under the town government act of 1873 (Stats. 1873, 74), who has been sued for a license imposed by such town, has sufficient "beneficial interest" to maintain certiorari as to the proceedings of the county commissioners in establishing the government of such town.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The plaintiff applied to the court below for a writ of certiorari, requiring D. H. Hall, E. E. Phillips, and L. W. Cromer, composing the board of county commissioners of Eureka County, to certify up the record of their proceedings in relation to the town of Eureka, in said county, and praying that such proceedings might be annulled and declared invalid. He set forth the filing of a petition on December 2, 1873, asking for the application to the town of Eureka of the provisions of the act of the legislature of February 21, 1873, providing for the government of towns and cities of the State; but alleged that it was not signed by a majority of the actual residents representing at least three-fifths of the taxable property of said town, and that neither the genuineness of all the signatures to said petition, nor the qualifications of the subscribers thereto, were

established by affidavit as required by law.  He further set
forth that the board of county commissioners, notwith-
standing the insufficiency of the petition and affidavits, as-
sumed to act thereon—established certain boundaries as
those of the town of Eureka, and declared the same sub-
ject to the provisions of said act of the legislature; and he
alleged such proceedings to be unauthorized by law, and
that the commissioners thereby exceeded their jurisdiction.
Plaintiff further set forth that he was an actual resident
within said boundaries, and a tax-payer of said county; that
he was carrying on business within said boundaries; that by
the provisions of an ordinance, purporting to be passed by
the government of said town, a license tax of $340 a quarter
had been imposed upon his business, and that upon his re-
fusal to pay the same, an action to recover the same with
the penalty prescribed had been commenced against him,
and was still pending.

In accordance with the prayer of the petition the writ
was issued, and the record of the proceedings referred to,
including copies of the petition and affidavits, was certified
up.   The matter was heard in March, 1874, and resulted in
a judgment annulling all the proceedings of the board of
county commissioners in relation to the town of Eureka.
The defendant appealed from the judgment.

The character of the affidavit is shown in the opinion.

*George W. Baker*, District Attorney, and *John F. Baker*,
for Appellant.

I.   Certiorari was not the proper remedy.   Relator did not
show in any way that he was beneficially interested or enti-
tled to the writ; and on grounds of public policy and great
public inconvenience it should have been refused.   It is well
settled that the inquiry in such a proceeding will not be ex-
tended further than to inquire if the inferior tribunal has

Morgan v. Eureka County Commissioners.

exceeded its jurisdiction, and no other question will be examined or determined. 2 Nev. 313; 5 Nev. 317; 6 Nev. 100; 8 Nev. 359.    But in order to entitle any person to this remedy, it must appear that he has a particular beneficial interest in the matter sought to be reviewed; and no such interest has been shown here.    That relator has been sued for license taxes and that the suit is still pending is unavailing for that purpose.

II.    If the acts of defendants are void for want of jurisdiction, as they must appear to be to have them annulled in this proceeding, then relator can make a successful defense to the collection of taxes and to any action brought, for the plain reason that void proceedings can be attacked in any manner either directly or collaterally.

III.    The record discloses the fact that action was taken in this matter by the commissioners on December 2, 1873, nearly four months prior to the institution of this proceeding.    We may add that various ordinances were passed; a fire department established; deputy sheriffs to act as policemen appointed; debts contracted and responsibilities assumed for the payment thereof; licenses collected and disbursed, and many other business transactions done naturally incident to a municipal government.    All this is swept away by this order; the fire department disbanded; the police force disorganized; unpaid demands left without a remedy for their collection; those who have paid licenses given a right of action back on the town for the money paid out by them; and all this in a town that comprises a large portion of the population of the county; and in a civil proceeding by one man; because he claims there was a technical defect in the organization !    See *In re Santis*, 9 Mich. 324; *Rutland* v. *County Commissioners of Worcester*, 20 Pick. 71; *People* v. *Mayor, etc.*, 5 Barbour, 43; 21 Barbour, 656; *Ex parte Weston*, 11 Mass. 417; *Ex parte Adams*, 4 Pick. 25; *Royalton* v. *Fox*,

5 Ver. 458; *Wilbraham* v. *Commrs.*, 11 Pick. 322; 25 Maine, 69; 24 Ver. 288; 7 Mass. 394; 22 Ver. 131.

IV.   If the affidavits were technically defective or not as full or positive as they might have been, that would not deprive the commissioners of jurisdiction; and the most that could be said would be that there was an irregular exercise of jurisdiction, and not a lack of it.   Whether their action was founded upon strictly legal, or sufficient evidence, is not within the province of this Court to inquire on certiorari.   See *Fall* v. *Commissioners of Humboldt County*, 6 Nev. 100; *Hetzel* v. *Commissioners of Eureka Co.*, 8 Nev. 359; *Sherman* v. *Kelly*, 4 Smith, 355; 11 Mich. 353; 4 Hill, 598; 19 Cal. 150; 20 Wend. 145; 4 Denio, 120; 21 Barbour, 656; 21 Wend. 316; 36 Barbour, 177; 1 Denio, 537.

V.   The very nature of the subject makes it utterly impossible for any person or number of persons to swear positively to the number of inhabitants or a majority of them, in any particular village or town.   So it is likewise impossible to determine with accuracy what aliquot part of all the property any certain number of signatures represent.   In the present case all was done that the legislature could have intended or required to be done, and at most the objections are purely technical, and should not be upheld to overthrow substantial justice and disturb substantial rights and liabilities.   The commissioners must have had some discretion in the matter of passing on the sufficiency of the petition and affidavits, else their act would not be judicial.   They did pass on the affidavits, and to their minds the requisite facts were established thereby; and all the authorities hold that if there was any evidence legally tending to establish those facts, the conclusion reached was conclusive, even on jurisdictional facts.

*Thomas Wren* and *David E. Bailey*, for Respondent.

I.   In applying the provisions of the act of the legislature for the government of towns and cities in this State did the county commissioners exceed their jurisdiction ?   If they did, and the act was judicial, unquestionably certiorari was the proper remedy.   To confer jurisdiction upon the commissioners under the act, it was necessary that a petition should be filed in the office of the county clerk, signed by a majority of the actual residents of the town or city to which the act was to be applied.   The commissioners were to determine that a majority of actual residents had signed the petition, and that they represented three-fifths of the taxable property of the town or city.   The act did not prescribe the mode of determining these facts, but as to the signatures and qualifications of the subscribers, it prescribed that they should be established by the affidavits of reliable tax-payers of said town or city, thus providing not only the mode of establishing them, but by whom they should be established.   If there was a sufficient compliance with the law to give the commissioners jurisdiction their acts were legal, and that is an end to this case; if there was not a sufficient compliance with the law they exceeded their jurisdiction, and if the acts were of a judicial character, and there was no other plain, speedy, and adequate remedy, then this is the proper remedy.

II.   The relator is beneficially interested.   He not only shows that he is a tax-payer, which would be sufficient, but that his business can only be carried on by the payment of a heavy license imposed by the commissioners, and that a suit has been instituted against him, and is now pending to enforce its collection.   This certainly lets him out of the list of mere ordinary tax-payers, and shows him very much interested.

III.   Were the affidavits filed with the petition sufficient? We think they were defective, in several essentials.  The affidavit of Sullivan was fatally defective, in not stating that he was a tax-payer of the town of Eureka.   *State* v. *Commissioners of Washoe County,* 5 Nev. 317.   All of the affidavits were fatally defective in not stating that all of the signatures were genuine, as the law required.   The intention of the legislature, fairly to be gathered from the language used, evidently was to require proof by affidavit that each man, whose name appeared upon the petition, actually signed it.   The affidavits were also to the best of the knowledge and belief of affiants, and their sources or means of knowledge or its extent, or whether they have any means of knowledge or any belief, are not stated.   The law requires certain facts to be established by the affidavits of reliable tax-payers.   Does it not require a higher order of proof to establish such facts, than such affidavits?   See 3 *N. Y.* Code Rep. 142; *People ex rel. Blacksmith* v. *Tracy,* 1 Howard Pr. 186.

IV.   The affidavits not being in compliance with the requirements of the law the commissioners did not acquire jurisdiction to act.   *Steel* v. *Steel,* 1 Nev. 27; *Waitz* v. *Ormsby Co.,* 1 Nev. 370; *State* v. *Commissioners of Washoe Co.,* 5 Nev. 317.

By the Court, HAWLEY, J. :

The act providing for the government of the towns and cities of this State, approved February 21, 1873, provides that before any of the powers or jurisdiction conferred by the act can be exercised, "there shall have been filed in the clerk's office of the county in which the same is situated a written petition for the application of the provisions of this act to said town or city, signed by a majority of the actual residents of such town or city, representing at least three-fifths of the taxable property.   The genuineness of all sig-

natures to such petition, and the qualifications of the sub-scribers, shall be established by the affidavits of reliable tax-payers of said town or city, filed with such petition." Stats. 1873, 74, Sec. 16.

A petition signed by six hundred and eighty-two persons was filed in the clerk's office of Eureka County, asking the board of county commissioners of said county to apply the provisions of said act to the town of Eureka, situate in said county. This petition was accompanied by the affidavits of J. D. Sullivan, T. J. Maupin, M. Borowsky and J. F. Ram-sey. At a meeting held on the 2d day of December, 1873, the board passed an order declaring that the town of Eureka, from and after that date, was subject to the provisions of said act. Respondent claims that the affidavits are fatally defective and thereupon argues that in acting upon said peti-tion and in passing said order the board exceeded its juris-diction. The affidavit of Sullivan states "that he is a resi-dent and tax-payer in Eureka *County*." The law requires that the affidavits shall be made by a tax-payer of the *town or city*. In order to give the board jurisdiction the affidavit must show that the party making it was one of the persons made competent by the law. "It should affirmatively appear that he is such person and he should also swear to the fact." *State* v. *The Board of County Commissioners of Washoe County*, 5 Nev. 320 and authorities there cited. In this respect the affidavit of Sullivan was fatally defective.

The other affidavits are not subject to this objection; but against them it is urged that they are defective; first, in failing to state that the signatures to the petition are genu-ine; second, that they are made upon information and belief. Each affiant states "that he has examined the signatures" upon the petition, "and the same represents three-fifths of the taxable property, as well as a majority of the actual resi-dents of said town, to the best of his knowledge and belief." This statement does not establish the fact that said petition

is " signed by a majority of the actual residents," nor does it affirmatively establish "the genuineness of all signatures to such petition." It was the evident intention of the legislature that the facts should be established by the affidavits of reliable tax-payers acquainted with the facts. The affidavits filed with the petition state nothing explicit. In effect, they amount to nothing more than a statement under oath that affiants know nothing contrary to its truth. It was not intended that these affidavits should be a mere formal matter. An affidavit which states no fact within the knowledge of the person making it would be of but little weight in any legal proceeding. Such an affidavit does not establish any fact required by the law to be established; it makes no statement of facts upon which the minds of the commissioners could be informed, or upon which they could base a decision. We think, as a general rule, that when the law requires any fact to be established by an affidavit, without prescribing its form, if made upon "information and belief," it will be insufficient unless it states positively the facts and circumstances upon which such belief is founded. Such is the rule in regard to affidavits for attachments. *Cadwell* v. *Colgate*, 7 Barb. 255; *Deupree* v. *Eisenach*, 9 Geo. 598; *Campbell* v. *Hall*, McCahons (Kan.), 53; *Hellman* v. *Fowler*, 24 Ark. 235. So in proceedings to hold to bail. *Towers* v. *Kingston*, Browne (Penn.), 35; *Matter of Faulkner*, 4 Hill, 601; *Mosher* v. *The People*, 5 Barb. 578; *Blason* v. *Bruno*, 33 Barb. 521; *Adamson* v. *Wood*, 5 Black, 449; *Dyer* v. *Flint*, 21 Ill. 84; *Nelson et al.* v. *Cutler et al.*, 3 McLean, 329. And in numerous other cases. *Whitlock* v. *Roth*, Code R., Vol. 3 (N. Y.), 142; *The People* v. *Perrin*, 1 How. Pr. R. 76; *The People* v. *Tracy*, 1 How. Pr. R. 190; *Bridgeford* v. *Steamboat Elk*, 6 Mo. 357; *Table M. M. Co.* v. *Defeat M. Co.*, 4 Nev. 219; *State* v. *O'Flaherty*, 7 Nev. 157. This case does not come within any of the exceptions to this rule.

Morgan *v.* Eureka County Commissioners.

It may have been, as contended by appellant's counsel, utterly impossible for affiants to state positively the fact, under oath, that said petition was "signed by a majority of the actual residents of such town, * * representing at least three-fifths of the taxable property," until the boundaries of the town had been fixed by the board.  It might further be urged that affiants were not invested with the ubiquity and the omniscience to know every man's signature, and be in possession of the exact amount of his taxable property. The law does not require impossibilities; but it does exact at least the impress of good faith and of probable cause. Every lawyer knows that affidavits are frequently made upon information and belief by men who really know nothing about the facts.  Everybody knows that there is a well defined distinction between a positive affidavit and one founded merely on information and belief.  If affiants knew the facts to be true, they should have so stated.  If they knew nothing in regard to the facts they should not have made the affidavits.  If they had no positive knowledge that the facts were true, but so believed from information, they should have stated their means of knowledge; given the nature and sources of their information, and stated in positive terms the facts and circumstances upon which their belief was founded.  The petition and affidavits seem to have been framed with special reference to the evasion of the law instead of a compliance with it.  The petition does not purport to be signed by residents or tax-payers of the town, and the affidavits state no facts in explicit or positive terms. They are radically defective in form and substance, and fail to establish any of the facts required by the law to be established before "any of the powers or jurisdiction" conferred by the act could be exercised.  This is not a case, as claimed by appellant, of an irregular exercise of jurisdiction by the board; but a case where there is a total want of jurisdiction.  The board had no authority to act until the jurisdic-

tional facts were established as required by the law. If the law had left the question of the sufficiency of the petition to be determined by the board, without affidavits, then it would have been a case similar to that of *Hetzel* v. *The Commissioners of Eureka County*, 8 Nev. 359, where the sufficiency of the evidence upon which the board acted could not be inquired into by the writ of certiorari. The petition of respondent clearly shows that he was beneficially interested and entitled to the writ.

The judgment of the district court annulling the proceedings of the board is affirmed.